Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 13 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 1:23-CR-2039-MKD-7 |
| Plaintiff, | |
| v. | Pretrial Diversion Agreement |
| MARIA T. MONTELONGO, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney, as well as Defendant, Maria T. Montelongo, and Defendant's counsel, Robin Emmans, agree to the following Pretrial Diversion Agreement (the "Agreement"):

**I. Overview and Information**

1. On August 8, 2023, a grand jury sitting in the Eastern District of Washington, returned a Superseding Indictment that charged the Defendant and six other co-defendants with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (viii), 846.

2. Defendant stipulates and agrees that Defendant did in fact violate 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (viii), 846 and that the United States could prove

PRETRIAL DIVERSION AGREEMENT - 1

Defendant's guilt beyond a reasonable doubt. Defendant wishes to accept responsibility for this conduct. Accordingly, Defendant stipulates and agrees to the following facts, referred to herein as the "Covered Conduct":

    a.    In August 2022, deputies assigned to the Spokane County Sheriff's Office (SCSO) Regional Intelligence Group 9 (RIG9) were assigned to listen to recorded jail phone calls of individuals being held at the Spokane County Jail. One of those individuals was a person named Alexandro Aguilar. Aguilar was being held at the jail pre-trial and later following a conviction for Murder in the First Degree and other charges. He was awaiting subsequent transfer to the Washington State Penitentiary located in Walla Walla, Washington. While listening to Aguilar's calls, the deputies identified a female, who he communicated routinely with, as acting as his agent for drug trafficking operations on the outside. This female was subsequently identified as Kassandra Montelongo. The deputies identified K. Montelongo through image comparisons of the recorded video phone calls with Aguilar and her department of licensing photographs.

Through the course of this investigation, agents identified a number of individuals involved in a conspiracy to distribute controlled substances:

1. Alexandro AGUILAR;
2. Kassandra MONTELONGO;
3. Luis LARA;
4. Jose P. GARCIA;
5. Rafael MEDINA ("Fatboy");
6. Nathan MENDOZA; and
7. Maria MONTELONGO (the Defendant).

On January 5, 2023, deputies listened to a recorded jail phone call between K. Montelongo and Aguilar wherein Aguilar asked K. Montelongo if Jose [Garcia] picked up the controlled substances. K. Montelongo responded that even though she

PRETRIAL DIVERSION AGREEMENT - 2

was not home he did and "grandma" [M. Montelongo] was the one who gave the controlled substances to Jose.

January 18, 2023 Controlled Buy:

On January 18, 2023, CS1 coordinated another controlled purchase of methamphetamine and fentanyl from Garcia. During the controlled purchase, CS1 exchanged $7,000 in pre-recorded buy funds for approximately three pounds of methamphetamine and 4,000 fentanyl-laced pills. Again, Garcia arrived at the location in the previously identified black Acura MDX. However this time, a female and child were with him in the car. Following the controlled buy, agents listened to a recorded jail call between Aguilar and CS1. During the call, CS1 is heard talking to Aguilar about the delivery of 1,000 extra fentanyl-laced pills. Aguilar confirmed with CS1 that he paid "7" to Garcia.

Following this controlled buy, CS1 is recorded on the jail call with Aguilar discussing the deliver of 1,000 extra fentanyl-lace pills. Aguilar also confirmed with CS1 and CS1 gave 7 (i.e. $7,000). Following this controlled buy, on January 25, 2023, CS1 sent a $3,000 Western Union money transfer to the Defendant for the purpose of paying down a drug debt. Additionally, on February 1, 2023, CS1 sent a $2,000 wire transfer from a Walmart in Spokane, Washington to the Defendant. This wire transfer was for the purpose of payment for controlled substances purchased by CS1 from K. Montelongo and Aguilar.

Subsequent DEA laboratory testing confirmed the following results for the controlled substances purchased on December 22, 2022:

**Exhibit 1B16:** N-Phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propenamide (Fentanyl), Dimethyl Sulfone, and Acetaminophen, Net Weight of 100.3 grams +/- .2 grams.

**Exhibit 1B17:** Methamphetamine Hydrocholoride, Net Weight of 1,309 grams +/- .002 grams, Substance Purity 98% +/- 7%, Amount Pure Substance 1,292 grams +/- .086 grams.

PRETRIAL DIVERSION AGREEMENT - 3

1  **Exhibit 1B29:** N-Phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propenamide
2  (Fentanyl), Acetaminophen, and Dimethyl Sulfone, Net Weight of 100.4 grams
3  +/- .2 grams.
4  **Exhibit 1B30:** N-Phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propenamide
5  (Fentanyl) Acetaminophen, and Dimethyl Sulfone, Net Weight of 100.0 grams
6  +/- .2 grams.
7  **Exhibit 1B34:** Methamphetamine Hydrocholoride, Net Weight of 446.9 grams
8  +/- .2 grams, Substance Purity 97% +/- 6%, Amount Pure Substance 433.4
9  grams +/- 29.0 grams.
10 **Exhibit 1B35:** N-Phenyl-N-[1-(2-phenylethyl)-4-piperidnyl] propenamide
11 (Fentanyl), and Acetaminophen, Net Weight of 99.9 grams +/- .2 grams.
12 **Exhibit 1B36:** Methamphetamine Hydrocholoride, Net Weight of 446.7 grams
13 +/- .2 grams, Substance Purity 97% +/- 6%, Amount Pure Substance 433.2
14 grams +/- 29.0 grams.

15 <u>Execution of Federal Search Warrant at 1110 Jackson Ave., Sunnyside, WA:</u>
16 On June 7, 2023, federal agents executed a federal search warrant at the
17 residence occupied by K. Montelongo and the Defendant. At this location, agents
18 located and arrested K. Montelongo and L. Lara. During the execution of the search,
19 agents located approximately 11 pounds of methamphetamine in a safe in a detached
20 shed on the property. The methamphetamine was packaged in 11 separate one gallon
21 ziplock bags. Also located within the safe were boxes containing additional Ziplock
22 bags and small scale. Additionally, the agents located multiple high capacity
23 magazines, bulk ammunition in various calibers, one AR-15 style rifle, and two
24 pistols. U.S. currency, and firearms. A separate storage unit was identified, which
25 was subsequently searched. Results of that search are pending. Scales, plastic
26 baggies, fully assembled pistol, and parts for a Sig Sauer pistol that returned as
27 previously having been reported stolen.
28

PRETRIAL DIVERSION AGREEMENT - 4

The methamphetamine seized in this case was field tested and returned presumptive positive for the presence of methamphetamine. Subsequent Drug Enforcement Administration laboratory testing confirmed the 11 packages contained methamphetamine. Exhibit 1B42: Methamphetamine Hydrocholoride, New Weight of 4921 grams +/- 2 grams, Substance Purity 98% +/- 6%, Amount Pure Substance 4822 grams +/- 297 grams.

In a post-*Miranda* interview, the Defendant admitted to having received the wire transfers and while she did not know specifically why she was receiving the transfers, she was aware that Aguilar was dealing drugs and that when he went away to prison, K. Montelongo was working on his behalf. The Defendant further stated that when she received the wire transfers, she would deliver them to K. Montelongo. The Defendant explained that she really does not like Aguilar and believes he is a bad influence on K. Montelongo.

4. On authority from the Attorney General of the United States, through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, prosecution in the Eastern District of Washington for the Covered Conduct shall be deferred for 24 months. This 24-month period begins on the date this Agreement is signed by both parties and accepted by the Court.

5. The United States and Defendant stipulate and agree that the Court will maintain jurisdiction over this matter and that the Court shall be the final arbiter as to: (1) whether a party breached this Agreement, and if so; (2) the appropriate remedy, which may include either terminating the Agreement or modifying its terms. A modification may include extending the Agreement's 24-month period by an additional 12 months, for a total of 36 months.

## II. Terms

Defendant stipulates and agrees to the following terms:

6. **Waiver of Constitutional Rights.** Defendant, by entering this Agreement, agrees to waive certain constitutional rights including (1) the right to a

PRETRIAL DIVERSION AGREEMENT - 5

jury trial; (2) the right to see, hear, and question witnesses; and (3) the right to compel witnesses to testify. Defendant knowingly and voluntarily waives the above rights.

7. **Supervision.** Defendant stipulates and agrees to be supervised by the U.S. Probation Office during this 24-month period (or longer, if the period is extended by the Court). Further, Defendant understands the following:

   a. Defendant shall not violate any federal, state, or local law. This term does not apply to minor civil infractions such as speeding.

   b. If Defendant is arrested or has any official contact with law enforcement in a civil or criminal investigative capacity, Defendant shall notify Defendant's supervising pretrial diversion officer within two business days.

   c. Defendant shall live within the jurisdiction of the Eastern District of Washington. If Defendant seeks to reside outside the District, Defendant shall notify and seek the approval of Defendant's supervising pretrial diversion officer so that appropriate arrangements in light of the Agreement can be made.

   d. Defendant shall maintain employment in a lawful occupation. When out of work, Defendant shall notify Defendant's supervising pretrial diversion officer. In the event that Defendant becomes self-employed, Defendant shall provide evidence of such self-employment.

   e. Defendant shall report to Defendant's supervising pretrial diversion officer as directed by the Court or U.S. Probation. Any failure to abide by the reporting requirements as established by the Court or U.S. Probation shall be deemed as an irrevocable violation of the Agreement.

   f. Defendant shall not possess, control, consume, and/or use any illegal control substance, including marijuana, nor possess any firearm or ammunition for any firearm unless approved by the supervising probation officer. Defendant shall not use alcohol to excess.

7. **Tolling.** Defendant stipulates and agrees to toll the running of all applicable statutes of limitations and any time-based defenses for the Covered

PRETRIAL DIVERSION AGREEMENT - 6

Conduct. This tolling shall run from the date the Agreement is signed by all parties until the Agreement expires or is terminated by the Court. Defendant stipulates and agrees that the Agreement's tolling provision does not abridge or curtail the applicable statute of limitations in any way, but rather extends the applicable statute of limitations by the period of time that the Agreement is in effect.

Defendant further expressly waives indictment and all rights to a speedy indictment and/or trial pursuant to the Sixth Amendment of the United States Constitution, 18 US.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

8. **Breach.** If the Court, after a hearing, terminates the Agreement based on a breach by Defendant, the United States may withdraw from the Diversion agreement and resume its prosecution against Defendant as to the charge(s) under investigation, and any additional charges.

9. **Admissibility of the Agreement in Prosecution.** In the event that the Court terminates the Agreement based on a breach by Defendant, Defendant stipulates and agrees that the Agreement and Defendant's admissions contained therein shall be admissible against Defendant at any trial, sentencing, or other related proceeding.

The United States stipulates and agrees to the following:

10. **Deferred Prosecution and Dismissal.** The United States stipulates and agrees to defer prosecution of the above-captioned matter for a period of 24 months (or up to 36 months, if the Agreement is extended). When and if Defendant satisfies all the requirements of the Agreement (including any modifications or extensions), the United States stipulates will seek dismissal with prejudice of the Superseding Indictment filed against Defendant pursuant to this Agreement. Except in the event of a violation by Defendant of any term of this Agreement, the United States will bring no additional charges against Defendant relating to Defendant's conduct as described in the Superseding Indictment and the Covered Conduct set forth above. This

agreement does not provide any protection against prosecution for any crimes except as set forth above. Defendant and the United States understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court declined to defer prosecution for any reason: (1) both the United States and Defendant are released from any obligation imposed upon them by this Agreement; and (2) this Agreement shall be null and void, except for the tolling provisions set forth herein.

### III. Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    8/13/2024
Patrick J. Cashman                         Date
Assistant U.S. Attorney

I have read the Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. I understand the terms and conditions of the Agreement and agree to comply with them.

_____    8/13/2024
Maria T. Montelongo                        Date
Defendant

_____    8/13/2024
Robin Emmans                               Date
Attorney for Defendant

PRETRIAL DIVERSION AGREEMENT - 8

Approved without passing judgment on the merits or wisdom of this diversion.

_____  8/13/2024
Hon. Mary K. Dimke                Date
United States District Judge

PRETRIAL DIVERSION AGREEMENT - 9